**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JOSE A. COREAS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-00327-BF |
| | § | |
| L-3 COMMUNICATIONS | § | |
| CORPORATION d/b/a L-3 | § | |
| COMMUNICATIONS – EOS, | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a consent case before United States Magistrate Judge Paul D. Stickney. Before the Court

for consideration is Defendant L-3 Communications Corporation d/b/a L-3 Communications – EOS's

("Defendant") Motion for Summary Judgment (doc. 17), filed on January 23, 2012. Plaintiff filed his

Original Petition in the 298th Judicial District Court of Dallas County, Texas. However, Defendant timely

removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff

alleges causes of action for age discrimination, race discrimination, and retaliation under the Texas

Commission on Human Rights Act ("TCHRA") and the Texas Labor Code § 21.00 *et seq.* Defendant

contends that summary judgment should be granted in its favor on all causes of action. Plaintiff filed a

timely response on February 20, 2012, and Defendant filed its reply on March 5, 2012. For the following

reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and enters judgment in favor

of Defendant.

<u>**Standard of Review**</u>

Summary judgment is appropriate when the pleadings and record evidence show that no

genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts will

preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support his motion with evidence negating the non-movant's case. Rather, the movant may satisfy his burden by pointing to the absence of evidence to support the non-movant's case. *Little*, 37 F.3d at 1075. Once the movant meets his burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "[A properly supported summary judgment motion] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  *See* FED. R. CIV. P. 56(e). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n. 7 (5th Cir.1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

Evidence on summary judgment may be considered to the extent that it is not based on hearsay or other information that is not admissible at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *see* Fed.R.Civ.P. 56(e) ("affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence ..."). This Court will consider only competent summary-judgment evidence in considering whether Defendant is entitled to summary judgment.

### <u>Undisputed Material Facts</u>[1]

Defendant is a provider of a diverse range of electronic systems that are used by the United States Department of Defense and other governmental agencies. Plaintiff began his employment with

---

[1] These facts are taken collectively from Defendant's Brief in Support of its Motion for Summary Judgment ("Def.'s Br.") and Plaintiff's Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Br.").

Defendant on September 21, 1999 as a Materials Handler II. Plaintiff worked in the Shipping/Receiving Department and his duties consisted of receiving shipments from vendors, preparing materials to be shipped and shipping them to customers, and ensuring that inventories were sufficient for the Manufacturing Department. Plaintiff, who is an El Salvadorian (Hispanic) male, was forty-two years old at the time of his termination. When Plaintiff was terminated, he was reporting directly to Dale Belseth ("Belseth"), a fifty-year old Caucasian male. Belseth and other supervisors reported to Jesse Rivera ("Rivera"), the Department Manager, a sixty-two year old Hispanic male.

Over the course of his employment, Plaintiff was written up by his supervisors and suspended without pay on several occasions. Plaintiff received his first written warning on or around May 1, 2008, by Rivera and Belseth for disruptive and disrespectful behavior towards his supervisors in team meetings. A meeting was subsequently held with Plaintiff, Belseth, and Human Resources Manager, Marynell Murphree ("Murphree") wherein Plaintiff was advised he needed to have a more positive attitude and be more of a team player. Murphree is a sixty-seven year old Caucasian female. On August 20, 2008, Belseth created a memo regarding Plaintiff's behavior, indicating that Plaintiff was in direct violation of his first written warning. In the memo, Belseth complained that Plaintiff was questioning his supervisor's decisions and discussing how he was reprimanded with another employee, Ernesto Allwood, during work hours in the shipping area.

Plaintiff received his second written warning on October 1, 2008 for not complying with the directions of his supervisors, Belseth and Rivera. Specifically, Plaintiff was instructed to "break code"[2]

---

[2]  Defendant's employees refer to interpreting military codes on packages received as "breaking code". Plaintiff claims he refused to "break code" because he wasn't certified in interpreting military codes, as required by Defendant's contracts with the military. The Court notes that Plaintiff fails to provide any evidence as to this requirement besides his own personal statement. (*See* Pl.'s App. at 2 ¶ 6.)

and he refused. As a result of this write-up, Plaintiff was also suspended from work without pay for three days. Plaintiff received his final written warning and suspension from work without pay in August 2009. Plaintiff and Herbert Sandoval ("Sandoval") were asked to work on July 24, 2009, a company holiday, from 10:00 a.m. to 2:00 p.m. Plaintiff and Sandoval came into work early that day at 8:00 a.m. instead of their 10:00 a.m. scheduled time. Thus, Plaintiff was written up and suspended for his failure to follow instructions by coming into work early without permission. Sandoval was not an employee of Defendant, and therefore he was not disciplined.

Throughout the course of these write-ups and suspensions, Plaintiff made various complaints to the Human Resources Department, the Ethics Department, and the Vice President of Operations. Plaintiff alleges that most of these complaints were regarding his requirement to "break code" and were never investigated. However, he does admit that Larry Carmichael, Senior Vice President of Operations, responded to his email regarding "breaking code" and advised Plaintiff that breaking military code was a job responsibility of the Materials Handler II position.

Beginning in November 2009, Defendant underwent an employee staff reduction in several of its departments. On November 20, 2009, Plaintiff and Belseth's positions in the Shipping/Receiving Department were eliminated. Plaintiff's position was selected for termination for various reasons including current and past job performance as well as disciplinary actions. Murphree and Rivera assisted in evaluating the employees in the Shipping/Receiving Department and deciding that Plaintiff and Belseth's positions should be eliminated. Murphree advised Plaintiff that he was being laid off and offered him a severance package. Belseth was also offered a severance package, which amounted to a higher severance pay than that of Plaintiff.

On May 19, 2010, Plaintiff filed a Charge of Discrimination with the Texas Workforce

Commission ("TWC"). Plaintiff accused Defendant of discriminating against him based on his age and race, and retaliating against him.

### Plaintiff's Objections

In Plaintiff's Brief, Plaintiff makes several objections to the admittance of certain affidavits by the Defendant. First, Plaintiff objects to the affidavit of John Esche ("Esche"), in its entirety, because Plaintiff alleges that Defendant maintained in its response to Plaintiff's Interrogatories that "Rivera and Murphree were the only people who made the decision to terminate Coreas." (Pl.'s Br. at 6.) However, upon reading Defendant's response to that interrogatory question, Defendant actually stated that Rivera and Murphree "assisted in determining whether Plaintiff's position would be eliminated." (*Id.* at 16.) Although it is true that Defendant did not mention Esche in its response, Defendant also did not state that Rivera and Murphree were the *only* people who made the decision, but instead stated they assisted in the decision. In fact, by using the word "assisted", Defendant implies that there was someone else involved in the decision as well. Furthermore, Defendant's response is consistent with Esche's affidavit which states that Rivera and Murphree selected Plaintiff's position for elimination and Esche approved the layoff. (*See* Def.'s App. at 1-2.) This objection is OVERRULED.

Next, Plaintiff objects to paragraphs 6, 7, and 8 of Jesse Rivera's affidavit. (Pl.'s Br. at 6.) The objection to paragraph 6 is the same objection Plaintiff had to the affidavit of Esche, and thus it is OVERRULED. Plaintiff objects to paragraphs 7 and 8 of the affidavit because they are conclusory. The Court finds that both paragraphs are based on the personal knowledge of Rivera and set out facts which would be admissible at trial. (Def.'s App. at 67-68; *see* FED. R. CIV. P. 56(e)(1).) Rivera was directly involved in the ranking and evaluation of the employees, and in the decision on who should be terminated. Thus, Plaintiff's objection to these two paragraphs is OVERRULED.

Finally, Plaintiff objects to paragraphs 4, 5, and 11 of Marynell Murphree's affidavit. (Pl. Br. at 6.) Plaintiff objects to paragraphs 4 and 5 of the affidavit because they are conclusory and belie the facts. The Court finds that the statements in the paragraphs are based on the personal knowledge of Murphree, set out facts which would be admissible and relevant at trial, and demonstrate that Murphree is competent to testify on the matters stated. (Def.'s App. at 73-75; *see* FED. R. CIV. P. 56(e)(1).) Murphree was the Director of Human Resources during the relevant time period. She personally investigated Plaintiff's complaints against Rivera, as well as Rivera's and the other supervisor's complaints against Plaintiff. The objection to these two paragraphs is OVERRULED. Plaintiff objects to paragraph 11 of the affidavit because Plaintiff does not believe that the same evaluation process was used for Belseth and Plaintiff. The Court finds that paragraph 11 is based on the personal knowledge of Murphree and sets out facts which would be admissible at trial. Thus, this objection is also OVERRULED.

<u>Analysis</u>

**Age and Race Discrimination**

In his Petition, Plaintiff brings his age and race discrimination claims under the TCHRA. (Pl.'s Pet. at IV.) The Fifth Circuit has held that "the TCHRA is coextensive with Title VII and the ADEA". *See Evans v. City of Houston,* 246 F.3d 344, 349 (5th Cir. 2001). Thus, the same analytical framework is used in a discrimination case under the TCHRA, as that which is used in a Title VII or Age Discrimination Employment Act ("ADEA") case. *Id.* In his Brief, Plaintiff concedes that he does not have any direct evidence of Defendant's discrimination towards Plaintiff, but instead contends there is circumstantial evidence. (Pl.'s Br. at 23.) In the Fifth Circuit, where there is no direct evidence of discrimination, a three-step burden shifting analysis is applied in determining a motion for summary

judgment. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). A plaintiff must first

demonstrate a *prima facie* case of discrimination. *Ortiz v. Shaw Group, Inc.,* 250 Fed. App'x 603, 606

(5th Cir. 2007).

In cases that involve a reduction-in-force ("RIF"), in order to prove discrimination a plaintiff

must show: (1) he is a member of a protected class; (2) he was adversely affected by the employer's

decision; (3) he was qualified to assume another position; and (4) there is sufficient evidence, either

circumstantial or direct, from which a fact finder may reasonably conclude that the employer intended

to discriminate in reaching the adverse employment action, or others who were not members of the

protected class remained in similar positions. *Id.* (citing *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d

38, 41 (5th Cir.1996); *Amburgey v. Corhart Refractories Corp., Inc.,* 936 F.2d 805, 812 (5th

Cir.1991)).

Once a plaintiff has made a *prima facie* showing of discrimination, the burden then shifts to the

employer to provide a legitimate, nondiscriminatory reason for the termination. *McDonnell Douglas,*

411 U.S. at 802. Once the employer has provided a sufficient nondiscriminatory reason, the burden

shifts back to the plaintiff to demonstrate that the employer's proffered reason is actually a pretext for

discrimination. *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999).

Here, there is no dispute that Plaintiff is a member of a protected class and that he was

adversely affected by Defendant's decision to terminate him. Under the ADEA, the protected class

includes persons forty years or older. 29 U.S.C. § 631. Plaintiff was forty-two years old when he was

terminated. (Pl.'s App. at 1, Aff. Jose Coreas). Under Title VII, the protected class is composed of

racial minorities. *McDonnell Douglas,* 411 U.S. at 792. Plaintiff is of El Salvadorian descent. (Pl.'s

App. at 1, Aff. Jose Coreas). Nonetheless, in its Brief, Defendant contends that Plaintiff has failed to

establish the third and fourth elements of a *prima facie* case of discrimination. (Def.'s Br. at 13-15.) This Court will perform the analysis that is utilized in RIF cases because Plaintiff's termination was a result of Defendant's RIF.[3] (*See* Def.'s App. at 74, Aff. Murphree).

In the third element of a RIF discrimination claim, a plaintiff must show that he was qualified to assume another position at the time of his discharge. During the relevant time period, Esche was Director of Supply Chain for Electro-Optical Systems ("EOS"). (Def.'s App. at 1, Aff. Esche). He was in this position when EOS and L-3's Infrared Products ("IRP") groups were merged, and during the implementation of the RIF. (*Id.*) In his affidavit, he explained that after the merger in January 2009, Defendant was forced to carry out a RIF to eliminate duplicate positions that the merger created. (*Id.*) The Shipping/Receiving Department had two positions that had to be eliminated. (*Id.* at 1-2.) Plaintiff and Belseth's positions were eliminated. (*Id.* at 2.) Esche stated in his affidavit that "[t]here were . . . no other positions for which Coreas qualified in the Department." (*Id.*) Plaintiff fails to point to any other position that he was qualified for at the time of his discharge. (*See* Pl.'s Pet.; Pl.'s Br.) Furthermore, the evidence shows that after Plaintiff's termination, there were subsequent layoffs of additional Material Handler II positions. (*See* Def.'s App. at 2, Aff. Esche.)

An employer is entitled to summary judgment if there are no other open positions for which the employee was qualified at the time of his discharge pursuant to a RIF. *Chavarria v. Despachos Del Notre, Inc.,* 390 F.Supp.2d 591, 597 (S.D. Tex. 2005) (granting summary judgment after finding that the plaintiff could not identify any open positions for which he was qualified, and thus he was unable

---

3   The Court notes that Plaintiff fails to use the modified RIF analysis in his Brief, but instead utilizes the elements to demonstrate a *prima facie* case of age discrimination. (Pl.'s Br. at 24.) The Court is also aware that Plaintiff abandons his claim of race discrimination, as he does not mention or brief the issue at all in his Response Brief. (*See* Pl.'s Br.)

to show the third factor in the RIF discrimination analysis). Because Plaintiff cannot demonstrate the third element of a *prima facie* case of discrimination pursuant to a RIF, an element which is essential to his claim and for which Plaintiff has the burden of proof at trial, his claim of discrimination fails. *See Celotex,* 477 U.S. at 322-23.

Nonetheless, assuming *arguendo,* that Plaintiff's termination was not the result of a RIF, Plaintiff still fails to meet his burden to demonstrate a *prima facie* case of age discrimination. In his Brief, Plaintiff contends otherwise. (Pl.'s Br. at 26.) If a plaintiff's termination is not the result of a RIF, to prove age discrimination under the ADEA, a plaintiff must show: (1) he was discharged; (2) he was qualified for the position sought; (3) he was a member of the protected class; and (4) he was either (i) replaced by someone younger or outside the protected class, or (ii) otherwise discharged because of his age. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir. 1995) (citing *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993)). The Court finds that Plaintiff cannot demonstrate that he was either replaced by someone younger or outside the protected class, or that he was otherwise discharged because of his age.

Plaintiff argues that he was replaced by Sandoval and Ramon Guardiolo ("Guardiolo"). (Pl.'s Br. at 25-26.) Sandoval is Hispanic and twenty-five years of age, and Guardiolo is twenty-one years of age. (*Id.* at 25.) However, Plaintiff provides no evidence to support his argument and instead the summary-judgment evidence indicates that nobody replaced Plaintiff. Plaintiff concedes that Guardiolo was an employee of Defendant and had been with the company for less than a year. (*Id.)* Thus, he already had another position with Defendant and did not "replace" Plaintiff. Further, the evidence shows that Sandoval was not an employee of Defendant at the time of Plaintiff's termination, or anytime thereafter, but instead was an employee of a temporary agency and merely assigned to work

for Defendant. (*See* Def.'s App. at 67-68, Aff. Rivera.) Plaintiff produces evidence that Sandoval used to be an employee of Defendant from June 11, 2007 through July 3, 2008. (Pl.'s App. at 78-83.) However, the Court is confused on how this demonstrates that Sandoval replaced Plaintiff. The evidence indicates that Plaintiff's position was eliminated altogether because of a RIF and that nobody replaced Plaintiff. (*See* Def.'s App. at 1-2, 68, 74, Aff.'s Esche, Rivera, Murphree.) Plaintiff has failed to show that he was replaced by someone younger or outside the protected class, and thus the Court now turns to whether Plaintiff can show that he was otherwise discharged because of his age.

Before Defendant implemented the RIF, the Shipping/Receiving Department was comprised of four Hispanic employees and four Caucasian employees. (*See* Def.'s App. at 69, Ex. A.) After the RIF, the Shipping/Receiving Department was composed of three Hispanic employees and three Caucasian employees. (*See id.*) Thus, the RIF's impact was equally distributed against all the represented races. The ages of the employees before the RIF were 50, 62, 42, 21, 57, 53, 42, and 57. (*Id.*) All employees were a member of the protected class except for one. *See* 29 U.S.C. § 631 (the protected class includes persons age forty years or older). Therefore, it is hard for Plaintiff to argue that he was targeted because of his age when all the employees except for one were in his protected class. Furthermore, Jesus Maldonado, a forty-two year old Hispanic male, also works as a Material Handler II in Plaintiff's department and he was not terminated. (Def.'s App. at 69, Ex. A.) Additionally, four employees who were older than Plaintiff (ages 62, 57, 57, and 53) were not eliminated in the RIF. (*See id.*) After Plaintiff and Belseth's positions were eliminated, five of the six remaining employees were over forty years of age. (*See id.*)

Plaintiff has failed to produce any evidence that he was otherwise discharged because of his age. The Fifth Circuit has found that "discrimination suits still require evidence of discrimination."

*Rubinstein v. Adm'rs of Tulane Educ. Fund,* 218 F.3d 392, 400 (5th Cir. 2000). Further, the Fifth

Circuit has held that evidence of intentional age discrimination may include: (1) stray remarks; (2)

company campaigns to present youthful images; (3) memoranda detailing the elimination of older

employees; (4) emails discussing the need to hire younger employees; and (5) inquiries about a

plaintiff's retirement plans. *See Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 574-77 (5th Cir.

2003); *see also Machinchick v. PB Power, Inc.,* 398 F.3d 345, 349-53 (5th Cir. 2005). Plaintiff has not

argued or presented any of this type of evidence which would establish that Defendant intentionally

discriminated against him. "In an employment discrimination case, we focus on whether a genuine

issue exists as to whether the defendant intentionally discriminated against the plaintiff." *Long v.*

*Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir. 1996) (citing *Armstrong v. City of Dallas,* 997 F.2d 62, 65

(5th Cir.1993)).

Plaintiff argues that because Guardiolo, a twenty-one year old with less experience than

Plaintiff, was not terminated, Plaintiff was somehow discriminated against. (Pl.'s Br. at 25-26.)

However, Plaintiff fails to mention that Guardiolo did not have the same history of inappropriate

behavior that Plaintiff had. (*See* Def.'s Br. at 2, 68, Aff.'s Esche, Rivera.) Furthermore, Plaintiff

mischaracterizes the evidence by stating that "such a disparity between Coreas and the much younger

workers retained by the Defendant is so apparent that it jumps up off the page . . ." (Pl.'s Br. at 26.)

Indeed, only one younger worker remained in the Shipping/Receiving Department after Plaintiff's

position was eliminated in the RIF. (Def.'s App. at 69, Ex. A.) The summary-judgment evidence

indicates that Plaintiff's position was eliminated because he ranked lower than any of the other

Material Handler II workers. (*See* Def.'s App. at 3, Ex. A.) Further, the evidence shows that the factors

that were utilized in determining which positions to eliminate included education, skill set, attendance,

teamwork, conduct/attitude, performance, and certification. (*Id.* at 74, Aff. Murphree.) Race and age were not factors utilized in the RIF evaluation process. (*Id.*)

In his Brief, Plaintiff complains that he was discriminated against because Belseth received higher severance pay than Plaintiff, and Plaintiff had been an employee of Defendant for longer than Belseth. (Pl.'s Br. at 17-18.) However, the Court points out that Belseth was eight years older than Plaintiff at the time they were terminated, and Belseth was not similarly situated to Plaintiff because he was Plaintiff's supervisor. (*See* Def.'s App. at 69, Ex. A; *Balakrishnan v. Bd. of Supervisors of La. State Univ. & Agr. & Mech. Coll.,* No. 10-31209, 2011 WL 6003312, at *3 (5th Cir. Nov. 29, 2011) (holding that in order to show discriminatory intent by preferential treatment, the person compared to the plaintiff must be similarly situated.)

Throughout his Brief, Plaintiff maintains that he was repeatedly asked to "break code" by his supervisors, and that this was something that he was not supposed to do because he did not have certification in breaking code. (*See* Pl.'s Br.) However, the Court fails to see how this request to "break code" has anything to do with Plaintiff's age or race. Furthermore, Plaintiff fails to point to any evidence demonstrating how this request discriminated against him in any way. Additionally, the Court notes that Plaintiff concedes that Larry Carmichael advised him that breaking military code was a part of the job description for a Materials Handler II position. (*Id.* at 10.) Plaintiff has failed to present any genuine issues of material fact on the last element of an age discrimination claim under the ADEA. Thus, this claim fails.

In sum, Plaintiff cannot demonstrate a *prima facie* case of discrimination, either under the modified RIF analysis or under the ADEA age discrimination analysis. Furthermore, the Court finds that since Plaintiff failed to address his race discrimination claim in his Response Brief, he abandoned

that claim.[4] Because Plaintiff has not met his burden at step one of the *McDonnell Douglas* framework, the Court need not address the next two steps. *See Evans,* 246 F.3d at 348 (upholding the district court's grant of summary judgment when the district court did not find a *prima facie* case of discrimination and thus did not address the remainder of the *McDonnell Douglas* framework). Plaintiff has failed to present any genuine issues of material fact for trial on his discrimination claim. Therefore, this claims fails as a matter of law.

**Retaliation**

Similar to claims of discrimination, where there is no direct evidence of retaliation, the three-step burden shifting analysis is applied in determining a motion for summary judgment. *See McDonnell Douglas Corp.,* 411 U.S. at 802. The first step in that burden shifting analysis is demonstrating a *prima facie* case of retaliation. *Long*, 88 F.3d at 304-05. In order to establish a claim for a *prima facie* case of retaliation under the TEX. LAB. CODE ANN. § 21.055 or the TCHRA, a plaintiff must show: (1) he was engaged in a protected activity; (2) he suffered a materially adverse employment action; and (3) there was a casual connection between the participation in the protected activity and the materially adverse action. *Mayberry v. Texas Dept. of Agric.,* 948 S.W.2d 312 (Tex. App. 1997). In order for a plaintiff to establish that he was engaged in a protected activity, he must show one of the following: (1) he opposed a discriminatory practice; (2) he made or filed a charge of

---

4   The Fifth Circuit has held that a party is considered to have abandoned a claim if he inadequately briefs the issue. *See Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir. 1991); *Villanueva v. CNA Ins. Companies,* 868 F.2d 684, 687 (5th Cir. 1989). Furthermore, district courts in the Fifth Circuit have found a plaintiff to have waived their claim where it was not addressed in their response to the employer's motion for summary judgment. *See Lopez v. River Oaks Imaging & Diagnostic Grp., Inc.,* 542 F.Supp.2d 653, 659 n. 9 (S.D. Tex. 2008); *Hill v. Sodexho Servs. of Tex., L.P.,* No. A-05-CA-732-LY, 2007 WL 4234261, at *2 n. 1 (W.D. Tex. Nov. 29, 2007); *Whitmire v. Terex Telelect, Inc.,* 390 F.Supp.2d 540, 548 (E.D. Tex. 2005).

discrimination with a governmental agency; (3) he filed a complaint with a court; or (4) he testified, assisted, or participated in an investigation, proceeding, or hearing. TEX. LAB. CODE ANN. § 21.055.

The crux of Plaintiff's contention that he was engaged in a protected activity is based on his complaints to Defendant's Ethics Department and Human Resources Department of "discriminatory practices". (*See* Pl.'s Br. at 27, 32.) In his Petition, Plaintiff also claims retaliation because he filed a charge or complaint of discrimination. (Pl.'s Pet. at 2.) Regarding his complaints to Defendant of "discriminatory practices", Plaintiff states that he never used the words "discrimination" or "retaliation", but "he alleged enough facts to reasonably be considered a complaint in the nature of opposition concerning an issue of disparate treatment." (Pl.'s Br. at 27.) This Court disagrees.

First, in Plaintiff's own deposition testimony, he admitted that he never complained to Murphree, in the Human Resources Department, that he was being discriminated against because of his race or age. (Def.'s App. at 50, Dep. Coreas.) Instead, Plaintiff testified that he complained to her about Rivera abusing his power and treating him unfairly. (*Id.* at 48-49.) When Murphree or Human Resources did not investigate his complaints, Plaintiff considered that discrimination. (*See id.* at 50.) When asked by defense counsel what the discrimination was based on, Plaintiff responded "[o]n everything, abuse of power." (*Id.)* Plaintiff further testified that he had not read any emails or heard any conversations that would indicate that Rivera was discriminating against him based on his race or age. (*Id.* at 50-51.) Plaintiff then continued by stating that Rivera is an abuser and it's obvious because that is Plaintiff's subjective belief. (*Id.* at 51.) However, the Fifth Circuit has held that "conclusory assertions and subjective beliefs are insufficient to support a retaliation claim". *Patrick v. Principi,* 275 F.3d 44, 44 (5th Cir. 2001) (affirming summary judgment in favor of employer on employee's racial discrimination and retaliation claims).

Plaintiff also claims that Rivera discriminated against him because Rivera had preferences for those employees who had worked with Rivera at a previous company before coming to work for Defendant. (*Id.* at 52.) The employees that Rivera preferred included Caucasians, Hispanics, and employees that were older than Plaintiff. (*See id.* at 52-54; *see also id.* at 69, Aff. Coreas.) Plaintiff also complained to the Ethics Department and Human Resources Department that Rivera made him "break code" when he was not certified to break military code and it was against company policy. (Pl.'s Br. at 8-12.) However, again, Plaintiff fails to point to any evidence which would indicate that Rivera discriminated against him based on his age or race by making him "break code". (*See* Pl.'s Br.) The Northern District of Texas has held that "if the conduct complained of by a plaintiff had nothing to do with race, color, religion, sex, or national origin, he cannot maintain a retaliation claim under Title VII or the TCHRA." *Sherman v. Dallas ISD,* No. 3:10-CV-1146-B-BH, 2011 WL 477500, *7 (N.D. Tex. Jan. 24, 2011).

Moreover, Rivera declared in his affidavit that he was not aware of Plaintiff making any complaints of discrimination or harassment to Defendant during his employment. (Def.'s App. at 68, Aff. Rivera). He also stated, under the penalty of perjury, that Plaintiff never made any complaints of discrimination or harassment to him. (*Id.*) Additionally, Murphree declared in her affidavit that she investigated Plaintiff's complaints against Rivera, and the complaints did not include any allegations of discrimination based on age, race, or any other protected category. (*Id.* at 73, Aff. Murphree.) She also said, under the penalty of perjury, that during her investigation of Plaintiff's complaints, Plaintiff never alleged that he was being discriminated against or harassed based on his age or race. (*Id.*)

The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas*

*Indep. Sch. Dist.,* No. 11-10090, 2011 WL 5299663, at *7 (5th Cir. Nov. 4, 2011); *see also Turner v.*

*Baylor Richardson Med. Ctr.,* 476 F.3d 337, 349 (5th Cir. 2007) (holding that an employee's email to

Human Resources complaining of supervisor's treatment, but failing to mention race did not give rise

to a protected activity to support a prima facie case of retaliation); *EEOC v. Omni Hotels Mgmt. Corp.,*

516 F.Supp.2d 678, 705 (N.D. Tex. 2007) (explaining that vague concerns or even vague

discrimination claims do not suffice to constitute an opposition to an unlawful employment practice).

Plaintiff has failed to demonstrate that he engaged in a protected activity by complaining of

"discriminatory practices" to Defendant.

      Regarding Plaintiff's claim that Defendant retaliated against him based on his charge or

complaint of discrimination is likewise unfounded. Plaintiff filed his Charge of Discrimination with

the Texas Workforce Commission on May 19, 2010. (Def.'s Br. at 8.) This filing occurred

approximately six months after Plaintiff's position was eliminated by Defendant on November 20,

2009. Furthermore, Plaintiff filed this lawsuit on January 21, 2011, more than one year after he was

terminated from his employment with Defendant. (*Id.*) It is self-evident that alleged adverse

employment actions that occurred prior to the protected activity cannot serve as the basis for a claim of

retaliation. *See Watkins v. Texas Dept. of Criminal Justice,* No. 06-20843, 2008 WL 686571, at *3 (5th

Cir. Mar. 12, 2008); *Bowers v. Principi,* No. 02-21175, 2003 WL 21554567 (5th Cir. Jul. 03, 2003);

*Duncan v. City of Dallas, Tex.,* No. 3:95-CV-0674-D, 1997 WL 289090, at *5 (N.D. Tex. May 21,

1997).

      Plaintiff cannot prove that he engaged in a protected activity, an essential element to his claim

and one for which he has the burden of proof at trial. Consequently, Plaintiff's claim of retaliation

cannot stand. *See Celotex,* 477 U.S. at 322-23. Because the Court finds that Plaintiff cannot

demonstrate a *prima facie* case of retaliation, the Court need not address the subsequent steps in the *McDonnell Douglas* framework. *See Evans,* 246 F.3d at 348

### Conclusion

Defendant has met its burden of demonstrating that it is entitled to judgment as a matter of law because based on the undisputed facts, there is no genuine issue of material fact for trial. Accordingly, Defendant's Motion for Summary Judgment (doc. 17) is **GRANTED** and Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**.

SO ORDERED, July 20, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE